IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RHONDA LEDBETTER, | |
| **Plaintiff,** | |
| **vs.** | Civil Action No. 1:17-cv-4157-SCJ-LTW |
| IDN-ARMSTRONG'S, INC.; IDN GLOBAL, INC.; and IDN, INC., | |
| **Defendants.** | |

---

### FIRST AMENDED AND SUBSTITUTED COMPLAINT

Plaintiff Rhonda Ledbetter, by and through the undersigned counsel, herein asserts

claims against Defendants IDN-Armstrong's, Inc.; IDN Global, Inc.; and IDN,

Inc., under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the

Family Medical Leave Act 29 U.S.C. § 2601 *et seq*. ("FMLA"), showing the Court

as follows:

### INTRODUCTION

1.

Plaintiff Ledbetter seeks to recover unpaid overtime wages from her former

employers, IDN-Armstrong's, Inc. (hereinafter "Armstrong's"), IDN Global, Inc.

(hereinafter "Global"), and IDN, Inc. (hereinafter "IDN") (collectively

"Defendants"). Ms. Ledbetter worked for Defendant Armstrong's in the position of Customer Service Manager for almost 20 years. She regularly worked in excess of 40 hours per week, and was not exempt from the FLSA's overtime wage requirements, but Armstrong's failed regularly to pay her for her overtime hours worked. Defendants Global and IDN are jointly and severally liable for Armstrong's FLSA violations because they statutory employers under the FLSA.

2.

Ms. Ledbetter also seeks to recover damages from Defendants resulting from her termination during the 11th week of a medical leave. Armstrong terminated Ms. Ledbetter's employment in an attempt to interfere with her exercise of her rights under the FMLA and in retaliation for seeking to exercise her rights under the FMLA. Defendants Global and IDN are jointly and severally liable for Armstrong's FMLA violations because they are statutory employers under the FMLA.

3.

Ms. Ledbetter anticipates amending this complaint to allege violations of the Americans with Disabilities Act, as amended, at an appropriate time.

## PARTIES, JURISDICTION, AND VENUE

### 4.

This Court's jurisdiction over Plaintiff's claims under the Fair Labor Standards Act and Family Medical Leave Act is invoked under 28 U.S.C. § 1331.

### 5.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims herein arose in this judicial district.

### 6.

Plaintiff Ledbetter is a natural person and resident of the State of Georgia.

### 7.

Defendant Armstrong's is a domestic corporation existing under the laws of the State of Georgia. Armstrong's has previously been served with process in this action.

### 8.

Armstrong's is subject to the personal jurisdiction of this Court.

9.

Defendant Global is a foreign corporation existing under the laws of the State of Delaware and is registered to do business in the State of Georgia. Global has previously been served with process in this action.

10.

Global is subject to the personal jurisdiction of this Court.

11.

Defendant IDN is a foreign corporation existing under the laws of the State of Texas with its principal offices located at 669 Airport Fwy., Ste. 308, Hurst, TX, 76053. IDN may be served with process on its registered agent for service, F. Michael Groover, 2401 Mustang Drive # 100, Grapevine, TX 76051.

12.

IDN is subject to the personal jurisdiction of this Court.

### FACTUAL ALLEGATIONS

### Corporate Organization and Joint Employer Allegations

13.

Armstrong's is a distributor of security hardware, access control systems, video surveillance equipment, doors and frames, locksmithing tools, and related security products.

14.

Armstrong's does business in multiple states in the southeastern U.S., and is headquartered in Chamblee, DeKalb County, Georgia.

15.

Armstrong's is a subsidiary of Defendant IDN.

16.

On May 11, 2016, Armstrong's filed a Certificate of notice of Intent to Dissolve with the Georgia Secretary of State.

17.

In January 2017, Armstrong's, IDN, and IDN-Hardware Sales, Inc. unified their payroll under a single federal tax ID number assigned to another IDN subsidiary, IDN-H. Hoffman, Inc.

18.

Starting in January 2017, Armstrong's, IDN IDN-Hardware Sales, Inc., and IDN-H. Hoffman, Inc. also unified their benefits, sick leave, personal leave, and short-term disability leave policies.

19.

IDN-H. Hoffman, Inc., changed its corporate name to IDN Global, Inc. (hereinafter "Global"), in October 2017.

20.

Beginning in January 2017 and continuing until the end of her employment, Ms.
Ledbetter performed work for the benefit of both Armstrong's and its parent
company, IDN, and was paid by Global.

21.

At all times relevant to the claims in this case Defendants have operated as an
integrated enterprise with centrally-established employment policies and practices,
including setting of employees' compensation and other terms and conditions of
employment.

22.

At all relevant times, the operations of Armstrong's and IDN were highly
interrelated.

23.

At all relevant times, Armstrong's and IDN have had centralized control of labor
relations.

24.

At all relevant times, Armstrong's and IDN have had a significant degree of
common ownership and financial control.

25.

At all relevant times, Armstrong's and IDN have shared employees, including Ms. Ledbetter.

26.

At all relevant times, Armstrong's has acted directly or indirectly in the interest of IDN in relation to Armstrong's employees, including Ms. Ledbetter.

27.

At all relevant times, Armstrong's and IDN have not been completely disassociated with respect to Ms. Ledbetter's employment and have shared control of Ms. Ledbetter's terms and conditions of employment by reason of the fact that IDN controls Armstrong's terms and conditions of employment.

28.

From January 2017 through at least the end of Ms. Ledbetter's employment on May 8, 2017, Global and Armstrong's had highly interrelated operations.

29.

From January 2017 through at least May 8, 2017, Global and Armstrong's had centralized control of labor relations.

30.

From January 2017 through at least May 8, 2017, Global and Armstrong's had a

significant degree of common ownership and financial control.

31.

From January 2017 through at least May 8, 2017, Global and Armstrong's shared

employees, including Ms. Ledbetter.

32.

From January 2017 through at least May 8, 2017, Armstrong's has acted directly or

indirectly in the interest of Global in relation to Armstrong's employees, including

Ms. Ledbetter.

33.

From January 2017 through at least May 8, 2017, Global and Armstrong's have not

been completely disassociated with respect to decisions affecting Ms. Ledbetter's

employment.

34.

Global is a successor of Armstrong's and is jointly liable with Armstrong's for the

FLSA violations committed by Armstrong's prior to January 2017.

35.

Global is a successor of Armstrong's and is jointly liable with Armstrong's for the FMLA and FLSA violations committed by Armstrong's beginning in and subsequent to January 2017.

**Plaintiff's Employment**

36.

Ms. Ledbetter worked for Armstrong's from approximately September 1997 through May 8, 2017.

37.

Throughout the three years prior to the filing of this Complaint and extending to the end of her employment ("the Relevant Time Period"), Ms. Ledbetter held the position of Armstrong's Customer Service Manager.

38.

As Customer Service Manager, Ms. Ledbetter's primary duties were assisting customers of Armstrong's Atlanta branch as well as branches in other southeastern states; resolving billing and product problems; facilitating returns of defective products; and acting as a liaison between various Armstrong's departments.

**FLSA Enterprise Coverage**

39.

Throughout the Relevant Time Period, Ms. Ledbetter was an "employee" within

the meaning of 29 U.S.C. § 203(e)(1).

40.

Throughout the Relevant Time Period, Armstrong's was Ms. Ledbetter's

"employer" within the meaning of 29 U.S.C. § 203(d).

41.

In 2014, Armstrong's had two or more "employees engaged in commerce" within

the meaning of 29 U.S.C. § 203(s)(1)(A).

42.

In 2014, Armstrong's had two or more "employees handling, selling or otherwise

working on goods or materials that have been moved in or produced for commerce

by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

43.

In 2014, Armstrong's had an annual gross volume of sales made or business done

of not less than $500,000 (exclusive of excise taxes at the retail level that are

separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

44.

In 2015, Armstrong's had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

45.

In 2015, Armstrong's had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

46.

In 2015, Armstrong's had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

47.

In 2016, Armstrong's had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

48.

In 2016, Armstrong's had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

49.

In 2016, Armstrong's had an annual gross volume of sales made or business done
of not less than $500,000 (exclusive of excise taxes at the retail level that are
separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

50.

In 2017, Armstrong's had two or more "employees engaged in commerce" within
the meaning of 29 U.S.C. § 203(s)(1)(A).

51.

In 2017, Armstrong's had two or more "employees handling, selling or otherwise
working on goods or materials that have been moved in or produced for commerce
by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

52.

In 2017, Armstrong's had an annual gross volume of sales made or business done
of not less than $500,000 (exclusive of excise taxes at the retail level that are
separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

53.

Throughout the Relevant Time Period, Armstrong's was an "enterprise engaged in
commerce or in the production of goods for commerce" within the meaning of 29
U.S.C. § 207(a)(1).

54.

Throughout the Relevant Time Period, IDN was Ms. Ledbetter's "employer" within the meaning of 29 U.S.C. § 203(d).

55.

In 2014, IDN had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

56.

In 2014, IDN had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

57.

In 2014, IDN had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

58.

In 2015, IDN had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

59.

In 2015, IDN had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

60.

In 2015, IDN had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

61.

In 2016, IDN had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

62.

In 2016, IDN had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

63.

In 2016, IDN had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

64.

In 2017, IDN had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

65.

In 2017, IDN had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

66.

In 2017, IDN had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

67.

Throughout the Relevant Time Period, IDN was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 207(a)(1).

68.

In 2017, Global had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

69.

In 2017, Global had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

70.

In 2017, Global had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

71.

In 2017, Global was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 207(a)(1).

**FLSA Non-Exempt Status**

72.

Throughout the Relevant Time Period, Ms. Ledbetter did not supervise or manage two or more full-time employees or their equivalent.

73.

Throughout the Relevant Time Period, Ms. Ledbetter's primary duty was the performance of non-exempt duties.

74.

Throughout the Relevant Time Period, Ms. Ledbetter's primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.

75.

Throughout the Relevant Time Period, Ms. Ledbetter's primary duties did not include comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.

76.

Throughout the Relevant Time Period, Ms. Ledbetter did not have the authority to formulate, affect, interpret, or implement Defendants' management policies or operating practices.

77.

Throughout the Relevant Time Period, Ms. Ledbetter did not carry out major assignments in conducting the operations of Defendants' business.

78.

Throughout the Relevant Time Period, Ms. Ledbetter did not perform work that affected Defendants' business operations to a substantial degree.

79.

Throughout the Relevant Time Period, Ms. Ledbetter did not have authority to commit Defendants in matters that have significant financial impact.

80.

Throughout the Relevant Time Period, Ms. Ledbetter did not have authority to waive or deviate from Defendants' established policies and procedures without prior approval.

81.

Throughout the Relevant Time Period, Ms. Ledbetter did not have authority to negotiate and bind Defendants on significant matters.

82.

Throughout the Relevant Time Period, Ms. Ledbetter did not provide consultation or expert advice to Defendants management.

83.

Throughout the Relevant Time Period, Ms. Ledbetter was not involved in planning Defendants' long- or short-term business objectives.

84.

Throughout the Relevant Time Period, Ms. Ledbetter did not investigate and resolve matters of business significance on behalf of Defendants' management.

85.

Throughout the Relevant Time Period, Ms. Ledbetter did not represent Defendants in handling complaints, arbitrating disputes, or resolving grievances.

86.

Throughout the Relevant Time Period, Ms. Ledbetter did not have authority to make independent choices, free from Defendants' immediate direction or supervision.

87.

Throughout the Relevant Time Period, Ms. Ledbetter was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

88.

Throughout the Relevant Time Period, Defendants did not employ Ms. Ledbetter in a bona fide professional capacity within the meaning of 29 USC § 213(a).

89.

Throughout the Relevant Time Period, Defendants did not employ Ms. Ledbetter in a bona fide administrative capacity within the meaning of 29 USC § 213(a).

90.

Throughout the Relevant Time Period, Defendants did not employ Ms. Ledbetter in a bona fide executive capacity within the meaning of 29 USC § 213(a).

**FLSA Overtime Violation**

91.

Throughout the Relevant Time Period, Ms. Ledbetter was typically scheduled to work a 40-hour workweek.

92.

Throughout the Relevant Time Period, Armstrong's and IDN misclassified Ms. Ledbetter as exempt from the FLSA's maximum hour (i.e., overtime) requirements.

93.

Throughout the Relevant Time Period, Armstrong's and IDN automatically deducted 30 minutes from Ms. Ledbetter's pay each day for a meal break.

94.

Throughout the Relevant Time Period, Ms. Ledbetter was not completely relieved of her duties during her daily meal breaks but frequently was called upon to perform work during that time.

95.

Throughout the Relevant Time Period, Ms. Ledbetter frequently worked outside of and in addition to her regularly scheduled 40-hour workweek.

96.

Throughout the Relevant Time Period, Armstrong's and IDN were aware that Ms. Ledbetter frequently performed work outside of and in addition to her regularly scheduled 40-hour workweek.

97.

Throughout the Relevant Time Period, Armstrong's and IDN regularly failed to pay Ms. Ledbetter an overtime premium of one-and-one-half times her regular hourly rate for each hour worked in excess of 40 in each workweek.

98.

In failing to pay Ms. Ledbetter all overtime premiums earned as required by the FLSA, Armstrong's and IDN did not rely on any letter ruling from the U.S. Department of Labor indicating that such practice was permitted under the FLSA.

99.

In failing to pay Ms. Ledbetter all overtime premiums earned as required by the FLSA, Armstrong's and IDN did not rely on any legal advice indicating that such practice was permitted under the FLSA.

**FMLA Coverage**

100.

Armstrong's employed Ms. Ledbetter during the twelve consecutive months immediately prior to May 8, 2017, the date of her termination.

101.

Ms. Ledbetter performed more than 1250 hours of work for Armstrong's during the twelve consecutive months immediately prior to May 8, 2017.

102.

Armstrong's employed 50 or more employees within 75 miles of the worksite at which it employed Ms. Ledbetter each working day during each of at least twenty 20 non-consecutive calendar workweeks in 2016.

103.

Armstrong's employed 50 or more employees within 75 miles of the worksite at which it employed Ms. Ledbetter each working day during each of at least twenty 20 non-consecutive calendar workweeks in 2017.

104.

Armstrong's employed 50 or more employees within 75 miles of the worksite at which it employed Ms. Ledbetter each working day during each of at least 20 non-consecutive calendar workweeks in the 12 months prior to May 8, 2017.

**FMLA Violations**

105.

On Saturday, February 18, 2017, Ms. Ledbetter suffered a severe injury to her arm in a fall.

106.

Ms. Ledbetter's arm injury required surgery, hospitalization for approximately one week, and extensive physical rehabilitation therapy.

107.

Ms. Ledbetter—through her adult daughters—timely advised Armstrong's of her injury and that she could not return to work for an indeterminate period.

108.

As of March 8, 2017, Ms. Ledbetter was placed on a short-term medical leave provided by Armstrong's pursuant to the terms of her employment.

109.

During the course of her medical treatment in February and March 2017, Ms. Ledbetter suffered severe and debilitating side effects from pain-killers prescribed for her arm injury.

110.

After returning home from the hospital—but while still on medical leave and

unable to work due to her severe arm injury—Ms. Ledbetter's pre-existing alcohol

addiction was exacerbated by the medications that had been prescribed for her.

111.

In the first week of April 2017, on the advice of her physicians, Ms. Ledbetter

entered treatment for her alcohol addiction that had been exacerbated by her

medical treatment for the arm injury.

112.

On April 9, 2017, Ms. Ledbetter was admitted on an inpatient basis to Willingway

Hospital in Statesboro, Georgia.

113.

The condition for which Ms. Ledbetter was admitted for treatment to Willingway

was a serious medical condition.

114.

As a condition of her treatment at Willingway, Ms. Ledbetter's was required to

surrender her cell phone and generally was prohibited from making phone calls

during her treatment.

115.

On or about April 10, 2017, Ms. Ledbetter's adult daughter contacted the head of
Armstrong's human resources department to inform him that Ms. Ledbetter was
receiving inpatient treatment at Willingway and to request information about
extending her leave period under the Family Medical Leave Act.

116.

On or about April 10, 2017, Ms. Ledbetter's adult daughter spoke with
Defendant's employee who was Ms. Ledbetter's immediate supervisor and
informed him that she was receiving inpatient treatment for addiction which is a
serious health condition.

117.

On or about April 17, 2017, Ms. Ledbetter and her counselor jointly contacted
Armstrong's Human Resources Director by phone to inform him that Ms.
Ledbetter required an additional three weeks of treatment.

118.

During that call, Ms. Ledbetter informed Armstrong's Human Resources Director
that she would be released from treatment by Friday, May 12, 2017, and that she
would be able to return to work on Monday, May 15, 2017.

119.

Throughout the entire period of Ms. Ledbetter's incapacitation—from February 18

until May 11, 2017—Ms. Ledbetter personally and/or through her adult daughters

remained in regular contact with Armstrong's Human Resources Director and with

Ms. Ledbetter's immediate supervisor to inform them of the status of her condition

120.

Throughout the entire period of Ms. Ledbetter's incapacitation, Ms. Ledbetter's

adult daughters repeatedly requested assistance from Defendant's management in

obtaining the necessary forms for applying for medical leave.

121.

Ms. Ledbetter timely provided all information and documentation necessary to

provide notice to Defendants of her need for medical leave and to comply with

Defendants' medical leave policies.

122.

On or about May 8, 2017, Defendants wrote to Ms. Ledbetter to inform her that

they were terminating her employment. She received Defendants' letter on May

11, 2017.

123.

Ms. Ledbetter's arm injury constituted a "serious health condition" within the meaning of 29 U.S.C. § 2611 (11).

124.

Ms. Ledbetter's addiction constituted a "serious health condition" within the meaning of 29 U.S.C. § 2611 (11).

125.

At all relevant times, Defendants were aware of Ms. Ledbetter's serious health conditions.

126.

At all relevant times, Defendants were aware that Ms. Ledbetter was under the care of physicians for treatment of her serious health conditions.

127.

At all times since at least May 15, 2017, Ms. Ledbetter has been ready, willing and able to perform the essential functions of her position.

128.

Prior to the termination of her employment, Defendants had never counseled, warned, suspended, or otherwise disciplined Ms. Ledbetter for violations of its disciplinary policies or performance requirements.

129.

Defendants terminated Ms. Ledbetter's employment in violation of the FMLA.

130.

As a result of Defendants' unlawful termination of her employment, Ms. Ledbetter

has suffered loss of income and other employment benefits.

**CLAIMS FOR RELIEF**

**Count One**
**Violation of 29 U.S.C. § 2615(a)(1) (FMLA Interference)**

131.

Paragraphs 1 through 130 are incorporated herein by this reference.

132.

Plaintiff was an eligible employee under the FMLA.

133.

At all relevant times, each Defendant was Plaintiff's "employer" within the

meaning of the FMLA.

134.

Under the FMLA, Plaintiff was entitled to 12 weeks of leave to receive treatment

for a serious health condition.

135.

Plaintiff requested leave from Defendants and gave notice to Defendants of her need to take leave to receive treatment for serious health conditions.

136.

Plaintiff notified Defendants of her intent to return to work before the expiration of the 12 weeks of FMLA leave.

137.

Plaintiff was medically able and willing to return to work before the expiration of 12 weeks of FMLA leave.

138.

Defendants deprived Plaintiff of benefits to which she was legally-entitled under the FMLA by terminating her employment in the 11th week of her qualifying leave.

139.

In terminating Plaintiff, Defendants interfered with, restrained of, and denied her rights afforded by the FMLA.

140.

As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered loss of employment, loss of income, and loss of healthcare benefits.

141.

Plaintiff is entitled to recover the wages and employment benefits she has lost as a result of Defendants' unlawful conduct, and interest thereon, calculated at the prevailing rate.

142.

Plaintiff is entitled to recover liquidated damages in amount equal to her lost wages, salary, and employment benefits, and her costs of litigation, including reasonable attorney's fees.

**Count Two**
**Violation of 29 U.S.C. § 2615(a)(2) (FMLA Retaliation)**

143.

Paragraphs 1 through 130 are incorporated herein by this reference.

144.

Plaintiff engaged in activity protected by the FMLA by taking leave to receive treatment for serious health conditions.

145.

Plaintiff suffered an adverse employment action when Defendants terminated her employment on May 8, 2017.

146.

Defendants terminated Plaintiff's employment in retaliation for her use of leave protected by the FMLA.

147.

As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered loss of employment, loss of income, and loss of vacation, retirement and healthcare benefits.

148.

Plaintiff is entitled to recover from Defendants the wages, salary, and employment benefits she has lost as a result of their unlawful conduct, and interest thereon, calculated at the prevailing rate.

149.

Plaintiff is entitled to recover liquidated damages pursuant to 29 U.S.C. § 2617(a)(1).

150.

Plaintiff is entitled to recover her costs of litigation, including her reasonable attorney's fees, pursuant to 29 U.S.C. § 2617(a)(3).

**Count Three**
**Violation of 29 U.S.C. §§ 207 and 215**

151.

Paragraphs 1 through 130 are incorporated herein by this reference.

152.

Throughout the Relevant Time Period, Plaintiff was an employee of Defendants Armstrong's and IDN, covered by the FLSA, and entitled to the maximum hours protections set forth in 29 U.S.C. §§ 207 and 215.

153.

Throughout the Relevant Time Period, Plaintiff regularly worked in excess of forty (40) hours per week.

154.

Throughout the Relevant Time Period, Defendants Armstrong's and IDN regularly failed to compensate Plaintiff at one-and-one-half times her regular hourly rate (the "required rate") for each hour worked in excess of 40 hours during each workweek.

155.

Defendants Armstrong's and IDN's failure to compensate Plaintiff at the required rate for all hours actually worked over forty (40) hours per week is a violation of 29 U.S.C. §§ 207 and 215.

156.

Defendants Armstrong's and IDN's violation of the FLSA's maximum hours provision was willful, thereby extending the FLSA's statute of limitations to three years.

157.

Plaintiff is entitled to receive from Defendants Armstrong's and IDN all unpaid overtime wages, liquidated damages in an amount equal to the unpaid overtime compensation, and reasonable attorney's fees and costs of litigation, pursuant to 29 U.S.C. § 216.

WHEREFORE, Plaintiff requests that this Court:

(a)    Take jurisdiction of this matter;

(b)    Grant a trial by jury as to all matters properly triable to a jury;

(c)    Issue an Order holding each of the Defendants to be an "employer" as that term is defined under the FMLA;

(d)    Issue an Order holding that Plaintiff was an eligible employee entitled to the protections provided by FMLA;

(e)    Issue an Order holding that Defendants unlawfully interfered with Plaintiff's exercise of her rights under the FMLA;

(f)    Issue an Order holding that Defendants unlawfully retaliated against Plaintiff because of her exercise of her rights under the FMLA;

(g)    Award Plaintiff all compensation and employment benefits that she lost as a result of Defendants' unlawful conduct, plus interest thereon, calculated at the prevailing rate, plus liquidated damages thereon, as required by the FMLA;

(h)    Issue an Order holding Defendants Armstrong's and IDN to be Plaintiff's "employers" as that term is defined under the FLSA;

(i)    Issue a judgment declaring that Plaintiff was covered by the maximum hours provisions of the FLSA and that Defendants Armstrong's and IDN have failed to comply with the maximum hours provisions of the FLSA;

(j)    Award Plaintiff full payment for each hour worked in excess of forty hours for each workweek at the required rate during the relevant time period, plus liquidated damages equaling her unpaid overtime wages, as required by the FLSA;

(k)    Award Plaintiff prejudgment interest on all amounts owed to the extent that liquidated damages are not awarded;

(l)    Award Plaintiff nominal damages;

(m)     Award Plaintiff her reasonable attorney's fees and costs of litigation;

and

(n)     Award any and such other further relief this Court deems just,

equitable and proper.

Respectfully submitted this 7th day of December 2017.

DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC

3100 Centennial Tower
101 Marietta Street, NW
Atlanta, Georgia 30303
(404) 979-3150 Telephone
(404) 979-3170 Facsimile
michaelcaldwell@dcbflegal.com
matthew.herrington@dcbflegal.com

*/s/ Matthew W. Herrington*
Michael A. Caldwell
Georgia Bar No. 102775
Matthew W. Herrington
Georgia Bar No. 275411

ATTORNEYS FOR PLAINTIFF