# EXPERT WITNESS REPORT OF MATTHEW W. NORMAN, M.D.

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Matthew W. Norman, M.D. submits this expert report in the case of *Ledbetter v. IDN-Armstrong's, Inc. et al.*, Civil Action File No. 1:17-cv-4157-SCJ-LTW (N.D. Ga.):

**A.    Introduction; Witness Qualifications, Publication History, and Previous Testimony**

1.    My opinions are based on my training and experience. I obtained my undergraduate degree in psychology from the University of Virginia in 1991. I obtained my M.D. from Mercer University School of Medicine in 1997. I completed my residency in psychiatry at Emory University in 2001, served as Chief Resident at Emory University Hospital in 2000 through 2001, and completed my fellowship in forensic psychiatry at Emory University in 2002. I am board certified in psychiatry with added qualifications in forensic psychiatry from the American Board of Psychiatry and Neurology. I have continuously practiced general and forensic psychiatry in Georgia since obtaining my medical license there in 1998. I also hold an appointment and actively teach as an Adjunct Associate Professor with the Department of Psychiatry and Behavioral Sciences, Emory University School of Medicine. My curriculum vitae, attached hereto as "Exhibit A." contains my educational history and other qualifications and all of my publications in at least the previous 10 years. My complete

testimonial experience as an expert witness in trial or deposition in at least the previous 4 years is attached hereto as "Exhibit B."

2. I have been retained in this matter by Plaintiff Rhonda Ledbetter to offer expert testimony regarding her physical and mental health condition from February 2017 through May 2017, the degree of her physical and mental impairment, and her ability to perform general life activities during that time period, specifically with respect to her status as a person with a "disability" under the Americans with Disabilities Act and a "serious health condition" under the Family and Medical Leave Act.

**B.   Terms and Definitions**

I use the following terms and definitions throughout this report:

3. **Disability**: Consistent with the Americans with Disabilities Act, 42 U.S.C. § 12102, I use the term "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities."

4. **Major Life Activities**: My understanding is that, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12102, in general, "major life activities, include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

concentrating, thinking, communicating, and working." With respect to major bodily functions, "major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."

5. **Serious Health Condition**: My understanding is that, pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2611(11), "a 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or, continuing treatment by a healthcare provider."

## C. The facts or data considered by the witness in forming his opinions

In forming my opinions expressed in this report, I reviewed the following documents and data provided to me by Ms. Ledbetter and her counsel:

6. Examination of Rhonda Ledbetter by Matthew W. Norman, M.D., at the offices of Psychiatric Associates of Atlanta, on May 30, 2018 (approximately two hours and forty minutes);

7. Ms. Ledbetter's medical records from Wellstar Cobb Hospital (Ledbetter 00255-00395);

8. Ms. Ledbetter's medical records from Wellstar Kennestone Hospital (Ledbetter 00159–00254);

9. Ms. Ledbetter's medical records from Willingway Hospital (Ledbetter 00406–00701);

10. Ms. Ledbetter's records from Wellstar After Visit Summary (Ledbetter 00702–00704);

11. Ms. Ledbetter's medical records from Pinnacle Orthopaedics (IDN 001789-001874);

12. Photos of Ms. Ledbetter's injuries (Ledbetter 01111–01122);

13. Ms. Ledbetter's records from Advanced Homecare (Ledbetter 00396–00401; 00404-00405);

14. Attending Physician Statement dated March 20, 2017 by Michael B. Piansky, M.D. (Ledbetter 00158);

15. Title 42 U.S.C. § 12102;

16. Title 29 U.S.C. § 2601;

17. Title 29 U.S.C. § 2611;

18. <u>Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition</u> (DSM-5), American Psychiatric Association, May 2013.

**D. Complete statement of all opinions to be expressed and the basis and reasons for them**

Upon completing my review of all the provided materials and conducting an examination in this case, the following are my opinions in regard to Ms. Rhonda Ledbetter's medical and psychiatric condition from February 2017 through May 2017. I have made all factual conclusions based on practices generally accepted in the medical and psychiatric community, and all my factual findings are supported by at least a preponderance of the evidence contained in facts and data reviewed:

19. Ms. Ledbetter was admitted to Wellstar Kennestone Hospital through the emergency department on February 18, 2017 secondary to a fracture of the left humeral shaft. She underwent corrective surgery on the same day. She was noted to also have Atrial Fibrillation. She was discharged on February 22, 2017 (Ledbetter 00180).

20. Ms. Ledbetter left Wellstar Kennestone Hospital on February 22, 2017 against medical advice secondary to "in [Ms. Ledbetter's] opinion the quality of care she was getting." Ms. Ledbetter then presented to Wellstar Cobb Hospital's emergency department on February 23, 2017 complaining of left "body and arm contusion." She was discharged the same day (Ledbetter 00257).

21. On March 20, 2017, Dr. Michael B. Piansky signed a form about seeing Ms. Ledbetter on March 15, 2017. Dr. Piansky concluded that Ms. Ledbetter was unable to work from March 5, 2017 through

March 27, 2017 secondary to swelling of the left hand, left humeral shaft fracture, Atrial fibrillation, and alcohol withdrawal. Dr. Piansky noted that the "estimated date [Ms. Ledbetter] should be able to return to work" as March 27, 2017 (Ledbetter 00158).

22. Ms. Ledbetter presented again to the emergency department of Wellstar Cobb Hospital on March 29, 2017 complaining of left arm pain and was noted to have a blood alcohol level of 322 mg/dL (Ledbetter 00347). This is over four times the legal limit to drive a motor vehicle and equivalent to about twelve to fourteen drinks based on her weight. A physician noted that her reported "alcohol [level] does not adequately reflect two glasses of wine tonight" and noted Ms. Ledbetter's alcohol "abuse" (Ledbetter 00343).

23. Ms. Ledbetter was admitted to Wesllstar Cobb Hospital on April 5, 2017 complaining of nausea and vomiting for two days. A social worker described her as having "below average" judgment (Ledbetter 00367). She was discharged on April 8, 2017 with multiple diagnoses, including Alcohol Withdrawal, Alcohol Dependence, Atrial Fibrillation, and Alcoholic Cirrhosis of the Liver without Ascites (Ledbetter 00353). She was noted to have elevated liver enzymes, which is indicative of alcohol abuse (Ledbetter 0000390).

24. Ms. Ledbetter was admitted to Willingway Hospital on April 9, 2017. She was discharged on May 12, 2017 with multiple diagnoses, including Alcohol Dependence, Atrial Fibrillation, and Alcoholic Cirrhosis (Ledbetter 00413). She "has been drinking alcohol nightly, about four to five glasses of wine since she was in her 30's" (Ledbetter 00414). Based on her previous visit to Wellstar Cobb Hospital, this was an underestimate of the amount of alcohol Ms. Ledbetter was drinking (although a "glass" of wine is not necessarily quantified in this note).

25. Ms. Ledbetter's daughter reported on April 10, 2017 that she was "falling several times, not eating well, [and] unable to function" secondary to alcohol (Ledbetter 00499).

26. Ms. Ledbetter suffered from confusion and irrational thinking on April 13, 2107 (Ledbetter 00487). She was "confused when speaking" with her employers on April 17, 2017 (Ledbetter 00488).

27. As of April 17, 2017, Ms. Ledbetter "became confused [and] was having difficulty with what to say" and had "cognitive impairment" (Ledbetter 00516).

28. Based on my review of Ms. Ledbetter's medical records and my examination of Ms. Ledbetter, I conclude that Ms. Ledbetter had

7

substantial physical limitations compared to most members of the general population starting on February 18, 2017 with respect to to her caring for herself, walking, and standing, secondary to her left humeral shaft fracture. These limitations continued through at least May 31, 2017 as evidenced by Dr. Piansky's Attending Physician Statement and the Pinnacle Orthopaedic records. These were physical impairments causing a disability.

29. Based on my review of Ms. Ledbetter's medical records and my examination of Ms. Ledbetter, I conclude that Ms. Ledbetter had significant mental limitations compared to most members of the general population starting at least by March 5, 2017 and continuing through May 12, 2017 with respect to her caring for herself, sleeping, learning, reading, concentrating, thinking, communicating, and working secondary to alcohol withdrawal. These were mental impairments causing a disability. In my opinion, there is no evidence that she could not have returned to work upon discharge from Willingway.

30. Based on my review of Ms. Ledbetter's medical records and my examination of Ms. Ledbetter, I conclude that Ms. Ledbetter had significant mental limitations compared to the general population starting at least as early as February 18, 2017 and continuing through May 12,

2017 with respect to caring for herself, performing manual tasks, eating, sleeping, learning, reading, concentrating, thinking, communicating, working, and functions of the brain secondary to alcohol dependence. These were mental impairments causing a disability. In my opinion, there is no evidence that she could not have returned to work upon discharge from Willingway.

31. Based on my review of Ms. Ledbetter's medical records and my examination of Ms. Ledbetter, I conclude that Ms. Ledbetter had numerous serious health conditions (i.e., Left Humeral Shaft Fracture, Atrial Fibrillation, Alcohol Withdrawal, and Alcohol Dependence) that required inpatient hospital care (i.e., Wellstar Kennestone Hospital, Wellstar Cobb Hospital), residential medical care (i.e., Willingway Hospital), and continuing treatment by a healthcare provider (i.e., Kennestone Hospital, Cobb Hospital, Dr. Piansky, Willingway Hospital) from at least February 18, 2017 through May 12, 2017.

32. In my opinion, there is significant evidence in the medical records reviewed that Ms. Ledbetter had both physical and mental impairments that substantially limited numerous major life activities from at least February 18, 2017 through May 12, 2017.

33. In my opinion, there is significant evidence in the medical records reviewed that Ms. Ledbetter had numerous serious health conditions requiring both inpatient hospital care and continuing treatment by healthcare providers from at least February 18, 2017 through May 12, 2017.

E. **Exhibits that will be used to summarize or support exepert's opinions**

All documents that may be used as exhibits to summarize or support my opinions are contained in Exhibit C, attached hereto. All Bates numbers referenced herein correspond to Bates numbers found in Exhibit C.

F. **Compensation to be paid for the study and testimony in the case**

34. I have agreed to undertake this matter billing at my customary rate of $500 per hour to review documents and records, and to prepare my expert report. If I were called to testify at a deposition or in court, my customary charges would be $2,000 for a half day and $4,000 for a full day.

I reserve the right to change or modify my opinions as expressed herein based upon the receipt of additional information.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 28th day of July 2018.

                                                                       */s/ Matthew W. Norman*
                                                                       Matthew W. Norman, M.D.